MOORE, Retired Circuit Judge.
The appellant was indicted, tried and convicted for the offense of burglary in the second degree. Final judgment was entered by the trial court and his punishment was fixed by said judgment at imprisonment in the penitentiary of Alabama for ten years. Hence, this appeal.
The appellant filed a motion for a change of venue. That motion was heard on June 11,1976, prior to the trial on its merits. On that hearing the appellant offered the testimony of two witnesses. Bob Howell was the first of said witnesses and he testified, in substance, that he was the news director of WTVY Television in Dothan, Alabama; that on September 3, 1975, he broadcast the following:
“Three Dothan men have been arrested with a string of recent burglaries and robberies. A spokesman for the Dothan Police Department identified the three as 19 year old Alonzo C. Brooks, 24 year old Wash Elliott and 25 year old Johnny Jackson. The spokesman said the arrest solved at least eight burglaries, three robberies and two auto thefts. The investigation is continuing and it is expected that more cases will be cleared as a result of the arrest. Several of the cases, middle-aged housewives were tied up after entry to their homes was gained and their homes were ransacked. The investiga *1377 tion is being conducted by personnel in all divisions in the department.”
witness testified that broadcast was made at 6:00 o’clock, 10:00 o’clock and at two other times between 12:00 midnight and 6:00 o’clock the next morning; that each broadcast ran for about 20 seconds; that on March 9,1976, he also gave a broadcast about the appellant’s cases as follows:
“In Judge White’s courtroom today a jury is hearing a case against Wash Elliott, who is charged with robbery. In addition to robbery charges, Elliott has one grand larceny and four second-degree burglary charges against him on the Court Calendar.”
This witness testified further that on March 10, 1976, he broadcast the following:
“Houston County Circuit Court Jury has convicted Wash Elliott and sentenced him to forty years in prison. This brings to a total of 75 years of charges against Elliott on robbery cases. He was convicted of robbing a Dothan woman on North Denton Street.”
This witness also testified those were the only three statements broadcast.
The second of said witnesses, Jack Budd, a reporter for the Dothan Eagle, testified that he wrote two articles for said paper concerning the cases against appellant in the Circuit Court of Houston County, Alabama, which were published in said paper. He testified, in substance, that one of those articles was published March 10, 1976, and he gave the substance of said article as follows:
“Elliott was convicted for robbery of Mrs. H. G. Fletcher of 301 South Denton Street on August 28. Mrs. Fletcher, who thought she was opening her door for a workman who was coming to install burglary bars on the windows, was confronted by a robber pointing a pistol at her. She testified in Court yesterday that she was tied up and robbed of practically everything in the house except the furniture. She said the robber spent three hours and fifteen minutes ransacking the house, searching every drawer and corner for loot, she said. At one point he took a break and went into the kitchen for a snack, the victim testified. Mrs. Fletcher said that she had been expecting a workman but was still in bed when the doorbell rang. I jumped up and went to the door, she recalled, she called the name of the workman she was expecting and a male voice on the other side of the door said yes, and she opened the door. There stood a negro man with a mask on his face and holding a pistol, she testified. He pushed me on in and said do as I tell you and you won’t get hurt. She said he tied her up and made her lie on her face in the floor and later forced her to go from room to room as he ransacked the house. She said he went through each dresser, every drawer, all the furniture, piled all the loot in the back door. He just took and took, she later recalled. Mrs. Fletcher said she was tied with an electric cord, and her hands and legs were tied to a coffee table and her mouth was taped. Elliott was one of three persons arrested in September in a series of robbery and burglary arrests. And, in December, he was sentenced to thirty years in prison on a robbery case. An appeal is pending in that case. A grand larceny and four second-degree burglary were continued today.”
This witness testified that article was written from notes he took in open court and from information in his file.
He also testified, in substance, another reporter, Mrs. Merkle, had written an article for said paper about the time of appellant’s arrest, in which she told about three black men being arrested in connection with series of robberies and burglaries and car theft and were booked at the jail; that she quoted Chief Williams as saying the arrest solved at least eight burglaries, three robberies, and one automobile theft; that it mentioned the name of Wash Elliott; that Tom Sorrell (the District Attorney) said he would petition the court for no bond in the robbery cases, these guys are fantastic; that police said Elliott would be charged with robbery of Mrs. Chester Harm, Mr. *1378 and Mrs. Ralph Daughtery and Mr. H. G. Fletcher. Elliott would also be charged with burglary of a house in the 700 block of Arlington Avenue, and the theft of a Volkswagen from Sears’ parking lot, Williams said. And, that police said Elliott had lived in Georgia, but came to Dothan from Panama City a few months ago; that police said he had numerous arrests in Florida and Georgia for burglaries and firearms violations; and that articles recovered were identified as taken from the robberies and burglaries of both Mrs. Fletcher and Mrs. Hartman, who were tied up and held hostage in their homes while the robber ransacked their houses; that Mrs. Hartman was also gagged; that Mr. and Mrs. Daugh-tery returned home and she went into the house while he stayed outside and she discovered a burglar in the kitchen and was struck on the head with a pistol; that a second man drew a pistol on Daughtery and ordered him into the house; that when he refused to go the two robbers ran.
That article was published September 3, 1975. It was headed, “CHIEF SAYS BURGLARIES SOLVED, TOO”. A clipping of the article was introduced into evidence and we have the entire article before us as it appears in the record. There are a few other statements in the article not quoted above.
This witness testified that he wrote a second article which was published in said paper on April 16, 1976, and a clipping thereof was introduced into evidence. The article, insofar as it applies to appellant, stated:
“Wash Elliott, 25, of 611 Linden St., Do-than, was convicted by a Houston County Circuit Court Jury Wednesday of grand larceny and was sentenced to ten years in prison. Yesterday was the last day of court.
“Circuit Clerk Julia Trant said Elliott was sentenced in previous convictions in other cases to 45 and 30 year prison terms. Appeals are pending in those cases and his attorney filed notice of appeal of this conviction to the Alabama Court of Criminal Appeals.
“He was convicted Wednesday of grand larceny of a $2500.00 car from Hamac Corp. There are four house burglaries pending against him and were continued by Judge Jerry White.”
That article also states matters concerning other cases against defendants other than the appellant.
The State offered no evidence in rebuttal. The trial Judge denied said motion.
When the case came on for trial on its merits on July 27, 1976, the motion for a change of venue was again presented and heard. Julia L. Trant, the Circuit Clerk, and also the clerk of the jury commission for Houston County, Alabama, was called as a witness for appellant on said hearing and testified, in substance, that she had been so employed since 1973; that at the December 8, 1975 session of court, the appellant had two robbery cases and a grand larceny case on the court docket or calendar; that there were 71 jurors on the striking list for that week of court and that she assumed that 80 or 90 were called for the week; that in March 1976, the appellant had a grand larceny case, a robbery case and four burglary in the second-degree cases on the calendar for that week; that there were 70 jurors on the striking list for the week and probably 15 or 20 more were called; that at the April session 1976 of said court, appellant had a grand larceny case which was tried and four burglary in the second degree cases that were continued on the calendar; that there were 59 jurors on the striking list for that week and some others that were called; that at the June sessions of said court, 1976, the appellant had case on the calendar for trial; that 67 jurors were on the striking list for that week and others were called that did not serve and were not present as jurors for one reason or another; that she had not seen or heard anything on the television about the appellant but had seen some articles in the newspaper; that she had not read an article about him the night before, and that the appellant had had three trials in Houston County prior to the date of her testimony; *1379 that none of the jurors serving now have served previously during the other trial; that none of the jurors that have served since she has been in the Clerk’s office have been returned to the jury box but that names have been added to the jury box during said time, and that in her opinion appellant could get a fair trial in Houston County. The testimony of this witness was all the evidence offered on said hearing. The testimony and exhibits taken on said motion on June 11, 1976, were not again offered or in any way presented on said hearing held on July 27, 1976. The trial Court again on July 27, 1976, denied appellant’s motion for a change of venue.
On the trial on its merits V. L. Todd, a witness for the State, testified, in substance, that he and his wife left his home in Dothan on July 25,1975; that when he left the home the doors and windows to the home were all closed and locked; that he returned to his home, which was located at 718 Arlington Avenue, Dothan, Alabama, on July 27, 1975, the doors were open and things in the house were in disarray and his pistol, which he had left in the house on July 25, 1975, was missing; that the next time he saw the pistol, Detective Wachob had it at police headquarters; that when he discovered the house had been broken into, he called the police and they came to his home and investigated; that he gave the police a description of the pistol that had been taken along with its serial number; that the pistol shown to him while he was testifying was his pistol and the one in question; that the serial numbers had been removed from the pistol between the time it was taken from his home and before the police got it into their possession; that he could and did identify the pistol by the fact that after he became the owner of the pistol he placed V T with a scriber in the bottom of the handle; that to see them, one-half of the handle had to be taken off; (he showed the jury those initials on the handle) that those marks were inside the handle; and, that his home was uninhabited at the time it was broken into. He also testified other items of personal property were missing from the home when he returned on July 27, 1975.
Policeman James Wachob testified, in substance, that he investigated the burglary and went to the Todd home on the 27th day of July, 1975, and that the missing pistol was described to him as a .38 caliber Smith and Wesson, nickle plated, snub-nosed pistol; that during the investigation, he got the pistol in question from Richard Tharp. On cross-examination by counsel for the appellant, this witness testified that Paul Rex Johnson told him that he had sold the pistol to Richard Tharp and that he had received it from Wash Elliott. On redirect examination, this witness testified that from the time the pistol was first obtained from Richard Tharp until the date of the trial the pistol had been in police custody and in a vault and that the gun there in court was the gun taken from Richard Tharp.
Paul Rex Johnson testified, in substance, that Wash Elliott showed him the pistol, a .38 snub-nosed, nickle plated, and it had the numbers on the back of the stock scratched off; that the pistol shown to him in court was the same pistol; that he sold the pistol to Richard Tharp for $60.00 and split the money with Elliott.
Richard Tharp testified that he received the pistol from Paul Rex Johnson and at the same time gave him $60.00; that he turned the pistol over to the police; and that the pistol shown to him in court, in his judgment, is the same pistol.
Sergeant Harold Locke, a criminal investigator for the Police Department of Do-than, testified, in substance, that he obtained the pistol in question from Richard Tharp; that the pistol shown to him in court was the pistol he got from Tharp; that he talked to appellant on September 2, 1975, in the presence of James Wachob and advised him of his constitutional rights; (his testimony at this point shows that he gave to the appellant a full and complete Miranda warning) that the appellant said he understood his rights; (his testimony further shows that any statement made by *1380 appellant at the time was a voluntary statement and willingly made); that the appellant made a statement which the witness wrote down. The witness read the statement to the Jury as follows:
“I ask him what did he have. A. Pistol. What kind of pistol? I don’t know what kind it was. Where did it come from? Out of the other house. Was it silver or a blue steel pistol? Silver. You took it out of the other house? Yes. Where was the other house located? He said I don’t remember Streets. I ask him what was the first house he broke into? Let’s see, I think it was last month. What happened to that house? Didn’t nothing happen. Well how did you get in? Through the door. Did you pick the lock? Yes, sir. I asked him can you pick locks? Some of them. Was anyone at home? No, sir. Did anyone come in while you were there? Answer: No. Did anyone come in the back door? No, sir. Tell me what you took from the house? Something to eat, some money and a little silver pistol. What kind of pistol was it? I don’t know what kind it was. Was it black or silver? I think it was silver.”
This witness further testified that the next afternoon he took the appellant to the residence of Mr. V. L. Todd, 718 Arlington Avenue and asked him if he broke into that house and he said, “Yes, sir”.
The State rested and the appellant moved to exclude the evidence on the ground that the State had not made out a prima facie case. He also moved to exclude the statement that was allowed into evidence based on the fact that the overall statement was involuntarily given. Those motions were denied by the trial court.
The appellant in his brief contends that the trial Court is in error for refusing his requested written charges No. 2 and No. 4 and he makes a second contention that reversible error exist because of the trial Court’s denial of his motion for a change of venue. We shall consider those contentions in the order stated.
Those two charges are as follows:
Defendant’s Requested Charge No. 2 The Court charges the jury that it is the duty of the State to show, beyond a reasonable doubt, and to the exclusion of every other reasonable hypothesis, every circumstance to show that the Defendant is guilty, and unless the State has done that, you the jury, should return a verdict of not guilty.
Defendant’s Requested Charge No. 4 The Court charges that unless the State proves, beyond a reasonable doubt, that the goods, merchandise, articles or things of value involved in this crime were the same goods, merchandise, articles or things of value that were in the possession of V. L. Todd and were the same goods, merchandise, articles or things of value that were removed from the house of Y. L. Todd and further that these were the same goods, merchandise, articles or things of value that were in the possession of the Defendant, you must acquit this Defendant.
In Wilson v. State, 243 Ala. 1, 8 So.2d 422, the following charge was requested and refused by the trial Court:
“The court charges the jury that the burden is upon the State, and it is the duty of the State to show, beyond all reasonable doubt, and to the exclusion of every other reasonable hypothesis every circumstance necessary to show that the defendant is guilty; and unless the State has done that in this case, it is your duty, gentlemen of the jury, to render a verdict of not guilty.”
That charge was approved by our Supreme Court in that case. It may well have been disapproved because of the phrase, “beyond all reasonable doubt” instead of beyond a reasonable doubt. But that is not important in the case before us. Attention is directed to the phrase in said charge, namely, “every circumstance necessary to show that the defendant is guilty” in contrast to the phrase in charge No. 2 in the case before us, to-wit: “every circumstance to show that the defendant is guilty”. The limiting word “necessary” does not appear *1381 in said charge No. 2. The door is thrown open for the jury to consider circumstances other than those that are necessary to show that the defendant is guilty.
In Richardson v. State, 43 Ala.App. 412, 191 So.2d 251, a case cited by appellant, the charge approved used the phrases “beyond a reasonable doubt” and “every circumstance necessary to show the defendant is guilty”. There the limiting word “necessary” is used. That word restricts the jury to consider only such circumstances as are necessary to show guilt and it limits the burden placed on the State to prove only such circumstances as are necessary to show guilt.
Said charge No. 2 is an incorrect statement of the law and was properly refused.
The appellant’s requested charge No. 4 when applied to the evidence in the case before us, requires the jury to acquit the appellant if the State failed to show the appellant had the pistol in question in his possession or if the State failed to show the pistol was the pistol removed from the house. The evidence shows without contradiction that the home in question was broken into and entered with an intent to steal and that a pistol and other property was taken from the home. That is full and complete proof of the corpus delicti. That coupled with the appellant’s admission made to the police that he did burglarize the home of V. L. Todd located at 718 Arlington Avenue, Dothan, Alabama, was sufficient to sustain a conviction for burglary of that home without any proof of the appellant having possession of the pistol shown in court or that it was the exact pistol that came from the home. The tracing of the chain of possession of the pistol exhibited in the trial is but a circumstance in the case and only adds to the proof of guilt, but it is not a circumstance that was absolutely necessary to be shown in order for the jury to convict. Said charge was correctly refused.
We now come to a consideration of the trial Court’s denial of appellant’s motion for a change of venue. This court in Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, cert. denied, 266 Ala. 694, 96 So.2d 178, with reference to a motion for a change of venue said:
“Also there was certified to us a transcript of the hearing held on Beddow’s motion for a change of venue, which was based on prejudice against him because of newspaper articles. Beddow was a Birmingham police officer at the time of the alleged offense and complained that the press was giving undue notice to his arrest. He further claimed he was being given too speedy a trial in the circumstances. His motion was overruled and an exception granted.
“We have before us the testimony of six witnesses, exhibits, and a record statement by the court below. The exhibits consist of clippings from the Birmingham newspapers narrating the charges against, and arrest of the defendant and Hunter. We note the testimony that at that time (November 9, 1953) Jefferson County had a population of 500,000 or upwards, and the judge stated that there were over 40,000 men whose names were in the jury box. See 56 Am.Jur., Venue, Section 70, n. 11.
“We find nothing in the clippings of an inflammatory character. The reports were in narrative form and purported to be interviews with the police officials. Newspaper articles, without more, are not evidence here; their effect must be shown. The testimony of the six witnesses did not meet the burden of persuasion. Moreover, the trial Court, though denying the change of venue, passed the case for four weeks.
“Altogether, considering the size of the jury box, the four-week continuance, and the defendant’s right through putting the veniremen on the voir dire to challenge for cause anyone who admitted being biased, we, in accordance with second sentence of Section 267, Title 15, Code 1940, adjudge the motion for a change of venue was properly overruled. Patton v. State, 246 Ala. 639, 21 So.2d 844.”
*1382 In Patton v. State, 246 Ala. 639, 21 So.2d 844, the court stated:
“The burden is upon the defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot reasonably be expected, in order to achieve the right to a change of venue. Godau v. State, 179 Ala. 27, 60 So. 908. The mere belief of the defendant or of his witnesses that he cannot receive such a trial is not enough. Lee v. State, Ala., [246 Ala. 343] 20 So.2d 471.
“The defendant rested his right to a change of venue upon the following facts, as distinguished from mere conclusions: (1) Extraordinary public interest in the case and supposed public indignation against defendant, as evidenced by a posse of citizens who joined in the search for the defendant; (2) his incarceration in an out-of-county jail; (3) publication in The Greensboro Watchman, a local newspaper, of an article in which it is claimed erroneous statements of fact were embraced, having a tendency to inflame the public mind; (4) the presence of several State Highway Patrolmen in and around the courthouse at the trial to aid the local constabulary in maintaining order and in searching persons for weapons who entered the courtroom; (5) presence on the 75-juror venire of nineteen jurors who were residents in and around Moundville, the neighborhood of the crime; and (6) appointment of two out-of-county attorneys who, it is alleged, were not as well acquainted with the personnel of the ve-nire as local counsel might have been. “Upon a careful consideration of the question, we are not reasonably satisfied that defendant could not obtain a fair and impartial trial before fair and impartial jurors in Hale County.”
The newspaper article published in The Greensboro Watchman in the Patton case, supra, is set out in the report of the case. It states more details than the articles and broadcasts in the case before us.
It is ordered and adjudged by this court that we are not reasonably satisfied that the appellant could not obtain a fair and impartial trial before a fair and impartial jury in Houston County, Alabama, and that the trial Court is not in error because of its denial of said motion.
There was substantial evidence of the appellant’s guilt and the motion to exclude the evidence was correctly overruled.
We have searched the record for error and have found none that would justify a reversal. It is, therefore, ordered and adjudged by this court that the judgment of the trial Court be and the same is affirmed.
The foregoing opinion was prepared by the Honorable L. S. Moore, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
The judgment is hereby
AFFIRMED.
TYSON, P. J., and HARRIS, DeCARLO and BOWEN, JJ., concur.
BOOKOUT, J., concurs in result.